IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | |
|---|---|
| LUDMYLA SKORYCHENKO, | OPINION and ORDER |
| Plaintiff, | |
| | 08-cv-626-bbc |
| v. | |
| ERNEST F. TOMPKINS, | |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

On September 28, 2009, I granted plaintiff Ludmyla Skorychenko's motion for summary judgment in this case, finding that there were no genuine issues of material fact that would prevent her from enforcing the provisions of an I-864 affidavit of support in which defendant Ernest Tompkins agreed to maintain plaintiff at an income of at least 125% of the federal poverty guidelines. In the opinion, I told plaintiff that she had the responsibility of demonstrating the precise amount of money defendant owes her for past support and I gave her an opportunity to list all sources of income and benefits she has received from the time of her divorce to the present.

Plaintiff has submitted materials to support her allegation that defendant owes her damages from February 16, 2006 to the present in the amount of $13,602. Defendant has

1

filed a motion to strike plaintiff's materials as untimely, dkt. #60, but the motion will be denied. It appears that plaintiff mailed her materials three days before the October 16 deadline, but they did not arrive until October 20. Defendant has pointed to no prejudice that was caused by the late filing, and the delay has caused no difficulty for the court.

Defendant objects to the amount of damages calculated by plaintiff, arguing that plaintiff's income never fell below 125% of the federal poverty guidelines, so he owes plaintiff no money. Plaintiff filed a reply to defendant's objections. Because she did not have leave to file a reply, I will disregard it. After reviewing the parties' submissions, I conclude that defendant owes plaintiff $10,948.60.

## DISCUSSION

The terms of the I-864 affidavit of support provide for a "measure of damages that would put plaintiff in as good a position as she would have been had the contract been performed." Shumye v. Felleke, 555 F. Supp. 2d 1020, 1024 (N.D. Cal. 2008). To determine the appropriate damages, the court is to subtract plaintiff's annual income from the particular years at issue from the 125% poverty threshold for each particular year. Id. at 1024-25.

Plaintiff and defendant came to drastically different calculations of the amount owing to plaintiff for three reasons. First, the parties dispute whether defendant must maintain

2

plaintiff at 125% of the federal poverty threshold for a one-person household, as plaintiff argues, or whether defendant's obligation is limited to maintaining plaintiff at only half of 125% of the federal poverty threshold for a two-person household, as defendant contends, because the parties would be a two-person family if they had not divorced. I agree with plaintiff that a one-person household is the appropriate household size for the purpose of calculating damages. Now that plaintiff is no longer married to defendant, her household consists of only one person. Hrachova v. Cook, 2009 WL 3674851, *4 n.13 (M.D. Fla. November 4, 2009) (if sponsored immigrant is no longer married and living with sponsor, the appropriate household size for calculating a sponsor's obligation under I-864 affidavit does not include the sponsor); Stump v. Stump, 2005 WL 2757329, *4 (N.D. Ind. October 25, 2005) (same). Basing plaintiff's recovery on the threshold level for a one-person household is consistent with the purpose behind the Immigration and Naturalization Act and the affidavit of support, which is to insure that sponsors carry out their obligations to prevent sponsored immigrants from becoming public charges. 8 U.S.C. § 1182(a)(4)(B)(ii). One-half of the 125% figure for a two-person household would not be sufficient to keep plaintiff from becoming a public charge.

The parties' second dispute concerns the types of plaintiff's resources that qualify as "income" to offset defendant's obligation. Defendant includes the value of property plaintiff received in the parties' divorce, the value of plaintiff's subsidized housing and plaintiff's tax

3

refunds, but he is in error as to all three categories of income.

The property plaintiff received in the divorce proceeding does not satisfy defendant's I-864 support obligations. That property division was a settlement of the parties' property rights. The property that plaintiff received represent what plaintiff already owned, not income that she earned in 2006. In this respect, I agree with the holding in Shumye, 555 F. Supp. 2d at 1025 that a divorce settlement awarded to plaintiff is not income that offsets a sponsor's I-864 obligation to the plaintiff.

Also, plaintiff's subsidized housing benefit will not be included in plaintiff's income because defendant has provided no basis for his assertion that the value of plaintiff's housing subsidy is $250 a month. Plaintiff pays $50 a month for her apartment in a subsidized housing complex. It appears that defendant attempted to learn the "non-subsidized" value of plaintiff's apartment, but failed. He cites a letter he received from someone at plaintiff's apartment complex, stating that the apartments in the subsidized housing complex have no 'non-subsidized' value." Dkt. #63, Ex. 10-1. Given that this is the only evidence defendant cites, I cannot understand how he concluded that plaintiff's subsidy is worth $250 a month.

In any event, I am not persuaded that plaintiff's subsidized housing benefit is analogous to income that should offset defendant's obligation to maintain plaintiff above the poverty level. The very reason that defendant had to sign the I-864 affidavit of support was to prevent plaintiff from becoming a public charge, dependent on local and state

4

benefits. It would be contrary to defendant's contractual obligations under the I-864 affidavit to allow him to escape his obligation by subtracting the benefits plaintiff has received from federal, state or local public assistance services. Although I have doubts whether FoodShare benefits should be treated as income rather than public benefits, plaintiff included them in her calculations, so I will do the same. However, I will not include plaintiff's subsidized housing as income.

Still on the subject of received income, the parties dispute the treatment of plaintiff's state and federal income tax refunds. I conclude that this money should not be included in the calculation of plaintiff's income. As evidence of the income she earned through her employment with the County of Marathon, plaintiff cites the "adjusted gross income" figure on her federal income tax returns. (Although this figure is not the most accurate reflection of a person's wages (compared to a pay statement, for example), I will accept the tax returns because both parties have relied on them as proof of plaintiff's wages.) The "adjusted gross income" figure on the federal tax return includes money that plaintiff overpaid in federal and state taxes and later received as a federal tax refund. Thus, to include plaintiff's tax refunds in calculating her total income would be to count the same amount twice: once as income and again as a refund. However, I agree with defendant that the earned income credit plaintiff received from the federal government should be included in calculation of her income in the year that she received it. This credit is not included in the "adjusted gross

5

income" amount. Further, although earned income is a public benefit, it can be distinguished from plaintiff's subsidized housing benefit because it is designed to supplement the beneficiary's *earned* income and defendant's monetary support is not included in determining earned income to plaintiff. Thus, even if defendant had been fulfilling his obligation of support, it is still likely that plaintiff would have received an earned income credit.

The parties' third dispute focuses on their difference over the proper calculation of certain sources of income. The parties agree that money plaintiff earned through employment, maintenance payments and FoodShare benefits qualifies as income to her. In calculating the amount of money plaintiff received in maintenance payments from defendant, plaintiff relies on bank statements that show bimonthly "Bur-Child Support CS" direct deposits. Defendant cites only the parties' divorce judgment, which requires him to pay plaintiff $200 a month. Because the divorce judgment is not evidence of the amount plaintiff actually received in maintenance payments, I will accept plaintiff's evidence on this matter.

Also, the parties disagree about the amount plaintiff received in FoodShare benefits in 2006 and 2007. For 2006, both parties cite a letter plaintiff received on February 16, 2006, that notified her that her FoodShare benefits would increase to $127 a month on March 1, 2006. Dkt. #58-5; dkt. #63, Ex. 5. Plaintiff has not explained how this letter

6

leads her to the figure of $1206 in benefits for 2006. Therefore, I will accept defendant's calculation of $1270 ($127 a month from March through December 2006).

For 2007, plaintiff cites the 2006 letter stating that her monthly benefits are $127, dkt. #58-5; an August 6, 2007 letter stating that her benefits will remain at $155 a month, dkt. #58-8, and a September 10, 2007 letter stating that her benefits are increasing to $162 a month. Dkt. #58-9. Defendant argues that plaintiff has not offered sufficient evidence to prove that her benefits were only $127 a month from January 2007 to August 2007, especially because the August 6, 2006 letter states that her benefits *will remain* at $155 a month. Defendant infers that plaintiff's benefits were likely $155 a month from January to September 2007. Neither party has provided evidence of the precise amount of plaintiff's FoodShare benefits from January to September 2007, so I must estimate the benefits plaintiff received from the evidence that exists. In 2006, plaintiff's benefits increased in March, so I will assume that her benefits increased in March 2007 as well. Thus, I will assume that plaintiff's benefits were $127 a month in January and February 2007, and $155 a month from March to September 2007.

CALCULATION OF DAMAGES

After reviewing the evidence of plaintiff's income earned since the date of the parties' divorce in February 2006, I conclude that plaintiff has received the following income and

7

benefits since the date of divorce:

2006:
    $5737.40 in wages from the County of Marathon, dkt. #58-3.
    $1270 in FoodShare benefits, dkt. #58-5;
    $ 1119 in maintenance payments, dkt. #58-6.
    Total: $8126.40

2007:
    $6734 in wages from the County of Marathon, dkt. #58-7;
    $412 in earned income credit, dkt. #63, Ex. 3;
    $1825 in FoodShare benefits, dkt. #58-8, 58-9.
    Total: $8971

2008:
    $8127 in wages from the County of Marathon, dkt. #58-10;
    $428 in earned income credit, dkt. #58-7;
    $1986 in FoodShare benefits, dkt. #58-11, 58-12;
    $9 in taxable interest, dkt. #58-10.
    Total: $10,550

2009:
    $6366 in wages from County of Marathon (through September 10, 2009,
        dkt. #58-13;
    $364 in earned income credit, dkt #58-10;
    $1828 in FoodShare benefits (through October 15, 2009), dkt. #58-13.
    Total: $ 8,558

According to the Federal Register, for a household size of one person, the poverty guidelines for 2006 are $9800; for 2007, they are $10,210; for 2008, they are $10,400; and for 2009, they are $10,830.  71 Fed. Reg. 3848 (Jan. 24, 2006); 72 Fed. Reg. 3147 (Jan. 24, 2007); 73 Fed. Reg. 3971 (Jan. 23, 2008); 74 Fed. Reg. 4200 (Jan. 23, 2009).

The following figures represent 125% of the federal poverty levels:

8

2006: $10,673 (calculated by a pro rata amount based on the date of the parties' divorce on February 16, 2006 ($12,250 – (12250 x 47/365)))

2007: $12,762

2008: $13,000

2009: $10,719 (calculated up to October 15, 2009, the last date of any reported income by plaintiff ($13,537 – 13,537 x 77/365)))

To calculate the amount of money defendant owes plaintiff for each year, the offsets for plaintiff's income are subtracted from the 125% figure:

2006: $10,673 – $8126.40 = $2546.60

2007: $12,762 – $8971 = $3791

2008: $13,000 – $10,550 = $2450

2009: $10,719 – $8558 = $2161

Using these calculations, I conclude that defendant owes plaintiff $10,948.60 for unpaid support obligations between the date of the divorce and October 15, 2009. Judgment will be entered against defendant in that amount.

Although this damage award compensates plaintiff for past support that defendant owes her, it does not guarantee that defendant will maintain her above the 125% poverty threshold in the future. Defendant should understand that his obligation under the I-864 affidavit of support will terminate only if (1) he dies; (2) plaintiff dies; (3) plaintiff becomes

9

a United States citizen; (4) plaintiff leaves the United States permanently; or (5) plaintiff is credited with 40 qualifying quarters of work. 8 U.S.C. § 1183a(a)(2), (3); 8 C.F.R. § 213a.2(e). Until one of these events occurs, defendant must continue to maintain plaintiff at 125% of the current federal poverty level.

ORDER

IT IS ORDERED that

1. Defendant Ernest Tompkins's motion to strike, dkt. #60, is DENIED.

2. The clerk is directed to enter judgment in favor of plaintiff, Ludmyla Skorychenko, and against defendant in the amount of $10,948.60 and close this case.

Entered this 16th day of November, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

10